USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:_____
DATE FILED: 6-30-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
The Carlton Group, Ltd., et al.,          :
                                          :
                              Plaintiff,  :
                                          :    14-cv-10139 (ALC)
        -against-                         :
                                          :    **OPINION AND ORDER**
Par-La-Ville Hotel & Residences Ltd., et al., :
                                          :
                              Defendants. :
                                          :
------------------------------------------------------------x

ANDREW L. CARTER, JR., United States District Judge:

## I. INTRODUCTION

This case arises out of Defendant Par-La-Ville Hotel & Residences Ltd.'s failure to pay Plaintiff Carlton Group, Ltd.'s commission as set forth in a contract between the parties. Plaintiff has moved pursuant to Federal Rule of Civil Procedure 55 for entry of an award of damages against Defendant pursuant to the default judgment entered by the Court on March 8, 2016, on the issue of liability alone. Plaintiff has asked the Court to determine the amount of damages on the default judgment without holding an evidentiary hearing. For the reasons set forth below, the motion is granted.

## II. BACKGROUND

Plaintiff's submissions establish that Plaintiff is a corporation specializing in the brokerage of mortgage and loan sales. Michaels Decl. ¶4. Defendant hired Plaintiff to perform loan brokerage services, pursuant to an Exclusive Debt & Equity Advisory Agreement (the "Agreement"). Id. The parties executed the Agreement on or about May 24, 2012. Id. Under the Agreement, if Plaintiff procured an investor providing proceeds of at least fifteen million dollars, then Plaintiff would be compensated for its services at a rate of four percent of the total loan

amount provided to Defendant from the investor furnished by Plaintiff. Michaels Decl., Ex. 1 at §2-3. Plaintiff's commission would be earned and payable upon the initial drawdown or withdrawal of the loan funds by Defendant when Defendant gained possession of any amount of the loan funds. Michaels Decl., Ex. 1 at §3.

The Agreement states that it "shall be governed by and construed in accordance with the laws of the State of New York." Michaels Decl., Ex. 1 at §9. The Agreement also provides that if "either party commences litigation against the other party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other party the costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in such litigation." Michaels Decl., Ex. 1 at §8.

By letter dated July 25, 2012, Plaintiff wrote to Defendant "to confirm" an amendment to the terms of the Agreement that would increase Plaintiff's commission under the Agreement from four percent of the total loan amount to five percent of the total loan amount. Michaels Decl., Ex. 2. Defendant signed and executed the letter. Id.

Plaintiff asserts that it procured Mexico Infrastructure Finance LLC ("MIF"), also known as Alsis Funds, as an investor for Defendant. Michaels Decl. ¶9. In support of its allegation, Plaintiff submits a copy of an escrow agreement dated July 9, 2014, between MIF and Defendant for the deposit of $15,449,858, pursuant to an underlying credit agreement for a loan in the amount of eighteen-million dollars. Michaels Decl., Ex. 3.

Plaintiff further asserts that on or about October 31, 2014, Defendant made an initial withdrawal of the funds from the escrow account. Michaels Decl. ¶17. Under operation of the amendment to the Agreement, Defendant was obligated to pay Plaintiff $900,000 (five percent of the total eighteen million-dollar loan amount) at the moment Defendant withdrew the funds from

the escrow account. Michaels Decl. ¶16. Plaintiff avers that it has yet to receive any funds from Defendant. Michaels Decl. ¶18.

Plaintiff's counsel, Gary Rosen, submits a declaration in support of Plaintiff's request for the attorneys' fees and filing costs. Rosen Decl. ¶29. Rosen asserts that the attorneys' fees requested for the preparation of the default judgment application are "reasonable . . . based on [his] work for five (5) hours at a rate of $450.00 per hour (which is $2,250 but which the undersigned wishes to reduce to $2,000 in conformity with this Court's usual practice)." Rosen Decl. ¶22(c). Rosen puts the costs of filing the Complaint at $400. Rosen Decl. ¶22(d).

Plaintiff requests damages as follows: (1) Plaintiff's unpaid brokerage commission in the amount of $900,000, plus interest at a rate of 9% per year since the date of the breach; (2) attorneys' fees in the amount of $2,000 for preparation of the default judgment application; and (3) $400 for the cost of filing the Complaint against Defendant. Rosen Decl. ¶22. Despite proper service, Defendant has yet to appear in the action or oppose Plaintiff's submission on the issue of default and damages.

## III. LEGAL STANDARD

### A. Determining Damages

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F.Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Deshmukh v. Cook, 630 F.Supp. 956, 959 (S.D.N.Y. 1986).

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, 973 F.2d at 158; see also Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). The plaintiff must prove damages before the entry of a final default judgment. See Alcantara, 183 F.3d at 155. The plaintiff is entitled to all reasonable inferences from the evidence it offers. See Au Bon Pain Corp., 653 F.2d at 65.

The court must "ascertain the amount of damages with reasonable certainty." Alcantara, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). By its terms, Federal Rule of Civil Procedure 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992) (citing Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The court may hold an inquest by affidavit without a hearing so long as the court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fed. R. Civ. P. 55(b)(2); Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). If the claim is for a sum certain, the court may enter a default judgment for the amount stated in the complaint. Transatlantic Marine., 109 F.3d at 111 (quoting Fustok, 873 F.2d at 40).

Damages for breach of contract are determined by calculating the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995) (citing Adams v. Lindblad Travel, Inc., 730 F.2d 89, 92 (2d Cir. 1984)). Where the breach of contract is for failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract

4

plus pre-judgment interest, calculated using the simple interest method. U.S. Naval Inst. v. Charter Commc'n, Inc., 936 F.2d 692, 698 (2d Cir. 1991); see also N.Y. C.P.L.R. §§ 5001, 5002. See also Scavenger, Inc. v. GT Interactive Software Corp., 289 A.D.2d 58, 58–9 (1st Dep't 2001). Interest is calculated at the New York State statutory rate of nine percent per annum. N.Y. C.P.L.R. § 5004.

### B. Determining Attorneys' Fees

With regard to attorneys' fees, the Second Circuit utilizes a "presumptively reasonable fee" standard to determine the appropriate award of fees. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the court looks to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Id. at 190. In determining a reasonable hourly rate, the Court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)).

According to the lodestar method, $450 per hour is reasonable compensation for experienced partners and senior attorneys practicing in the Southern District of New York. Watkins v. Smith, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) (collecting cases); Tomato Mgmt., Corp. v. CM Produce LLC, 2014 WL 2893368, at *3 (S.D.N.Y. June 26, 2014). See also Verizon Directories Corp. v. AMCAR Transp. Corp., 2008 WL 4891244, at *5 (S.D.N.Y. Nov. 12, 2008) (rates of $425 and $525 reasonable for partners with "extensive experience"); Silberblatt v. Morgan Stanley, 524 F.Supp.2d 425, 434 (S.D.N.Y. 2007) (reasonable that one partner and an "of counsel" bill at $550 per hour and three associates of varying seniority and experience bill at

$290, $350, and $425 per hour); Sheehan v. Metro. Life Ins. Co., 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (rates of $425 per hour for senior partner and $300 for associates, in breach-of-contract case, were reasonable).

Even if the court finds the hourly rate reasonable, "if the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" Gierlinger, 160 F.3d at 876. The court has broad discretion, using its experience with the case and the practice of law to assess the reasonableness of the hours spent and the rates charged in a given case. Id. At least one court in the District has held that "the time and labor required for seeking a judgment by default, pursuant to Fed. R. Civ. P. 55 and based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . *de minimis*." Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008).

## IV. DISCUSSION

### A. Damages

In the instant case, a hearing is not necessary. Plaintiff's uncontested submissions provide an adequate basis for awarding damages. The Agreement between Plaintiff and Defendant, as amended by the July 25, 2012 letter between the parties, obligates Defendant to pay Plaintiff a 5% finder's fee of the total loan amount secured by Plaintiff, as long as the investment exceeds fifteen million dollars. Michaels Decl., Ex. 1 at §2-3. Under the Agreement, Plaintiff's commission would be earned and payable upon the initial drawdown or withdrawal of the loan funds by Defendant when Defendant gained possession of any amount of the loan funds. Michaels Decl., Ex. 1 at §3. Plaintiff asserts that it procured MIF as an investor for Defendant and that MIF entered into a credit agreement with Defendant for a loan in the amount of eighteen million dollars.

Michaels Decl., Ex. 3. Pursuant to an escrow agreement relating to the loan, MIF deposited $15,449,858 of initial funding into an escrow account for Defendant. Id. On or about October 31, 2014, Defendant breached its agreement with Plaintiff and withdrew the funds without paying Plaintiff the 5% finder's fee of $900,000. Michaels Decl. ¶17.

The damages are reasonably ascertainable: the amount necessary to put Plaintiff in the same economic position as it would have been in had Defendant fulfilled the contract is $900,000, as well as pre-judgment interest, at a rate of 9% per year, that has accrued since October 31, 2014, the date of the breach. Defendant is therefore liable to Plaintiff for $1,034,260.27 in damages.

### B. Attorneys' Fees and Costs

Plaintiff also seeks attorneys' fees for the preparation of the default judgment application, based on its attorneys' work for five hours at a rate of $450.00 per hour, which the attorney has discounted from $2,250 to $2,000. Rosen Decl. ¶22(c). Mr. Rosen's rate is consistent with the current market rates as discussed in Section III(b), *supra*. Based upon this precedent, the Court finds that Mr. Rosen's rate was reasonable. Moreover, the five hours expended on the preparation of the eighteen-page application for default judgment and the accompanying declarations are also reasonable.

Additionally, Plaintiff requests $400 in costs for filing and serving the Complaint if this action. Rosen Decl. ¶22(d). These costs are recoverable pursuant to Paragraph Eight of the Agreement. Thus, the Court includes both Mr. Rosen's fees and the costs associated with prosecuting this action in Plaintiff's recovery.

## V. CONCLUSION

For the foregoing reasons, Plaintiff is awarded: (1) $1,034,260.27 in damages, which includes prejudgment interest at the statutory rate (nine percent per annum); (2) $2,000 in attorneys' fees; and (3) $400 in costs. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: June 30, 2016
      New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge